

U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**
TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

_____
**Signed August 30, 2006**                                              **United States Bankruptcy Judge**
_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| IN RE: § | |
| § | |
| DOUGLAS WAYNE DAVIS and § | |
| DORIS MARIE DAVIS, § | |
| Debtors. § | CASE NO. 06-41279-RFN-13 |
| § | |

## MEMORANDUM OPINION

Before the court is the First Amended Objection of Genesis Tax Loan Services, Inc., to Debtors' Confirmation and Request for Attorneys Fees (the "Objection") filed by Genesis Tax Loan Services, Inc. ("Genesis"). The court held a hearing on the confirmation of the chapter 13 plan of Douglas Wayne Davis and Doris Marie Davis (collectively, "Debtors") on July 20, 2006. At this hearing, the court heard oral argument regarding the Objection. Subsequent to the hearing, at the court's request, the parties each submitted written briefs with respect to the proper interest rate to be applied to Genesis' claim.

This matter is subject to the court's core jurisdiction pursuant to 28 U.S.C. §§ 1334(a) and 157(b)(B) and (L). This memorandum opinion comprises the court's findings of fact and conclusions of law. FED. R. BANKR. P. 7052 and 9014.

**I. Background**

The relevant facts are undisputed. Unable to pay the 2003 ad valorem taxes on their home, Debtors entered into an agreement with Genesis whereby Genesis would pay the ad valorem taxes on Debtors' behalf and receive transfer of the tax lien on Debtors' home pursuant to section 32.06 of the Texas Tax Code. Under the terms of the agreement, Debtors were to repay the debt to Genesis over seven years at 18 percent simple interest per year. The parties agreed that, should Debtors fail to perform their obligations under the agreement, Genesis had the right to accelerate the loan and foreclose on Debtors' home pursuant to section 51.002 of the Texas Property Code.

Debtors filed their voluntary petition commencing this case under chapter 13 of the Bankruptcy Code (the "Code")[1] on May 1, 2006. Under the terms of their second amended chapter 13 plan, Debtors propose to pay Genesis 8.5 percent interest on its claim in lieu of the 18 percent contract rate.[2] Genesis, finding this reduced interest rate unacceptable, filed the Objection.

**II. Issues**

The issues presented are straightforward:

(1) Is Genesis entitled to receive interest on its claim at its contracted for rate, or may Debtors, as they propose to do in their plan, repay Genesis' claim at a crammed down rate?

---

[1] 11 U.S.C. §§ 101-1532 (2005). All statutory citations herein are to the Code unless otherwise indicated.

[2] Under the terms of their original plan, Debtors proposed to pay Genesis only 6.5 percent interest. According to Debtors' brief, they have offered to pay Genesis as much as 12 percent interest, but Genesis has insisted upon receiving the 18 percent contract rate.

(2) Is Genesis entitled to reimbursement for attorney's fees incurred in connection with the Objection?

### III. Discussion

A. <u>Genesis is entitled receive interest on its claim at the contract rate.</u>

Whether Genesis is entitled to receive interest on its claim at its contract rate hinges on whether its claim falls within the scope of section 511 of the Code. Section 511, which was added to the Code as part of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"),[3] reads in relevant part:

> § 511. Rate of interest on tax claims
>
> (a) If any provision of this title requires the payment of interest on a tax claim or on an administrative expense tax, or the payment of interest to enable a creditor to receive the present value of the allowed amount of a tax claim, the rate of interest shall be the rate determined under applicable nonbankruptcy law.

Thus, if section 511 applies, Genesis must receive interest at "the rate determined under applicable nonbankruptcy law," i.e., the contract rate.[4] If section 511 does not apply, then the Debtors may modify the interest rate pursuant to section 1322(b)(2).[5]

---

[3] The amendments made by BAPCPA are effective for cases filed after October 17, 2005. Because Debtors filed their petition commencing this case on May 1, 2006, the court will apply the Code as amended by BAPCPA.

[4] Neither party made a substantial argument on the issue of section 511's applicability in its brief to the court. Genesis simply stated in a conclusory fashion that section 511 applies, and Debtors did not take a position on the issue at all.

Debtors did, however, devote a substantial portion of their brief to the issue of what nonbankruptcy law is "applicable" for purposes of determining the appropriate rate of interest on Genesis' claim to the extent the court did in fact find section 511 applicable. According to Debtors, the interest rate should be at most 12 percent, the highest rate that taxing authorities are allowed to charge on a claim for delinquent taxes under Texas law. *See* TEX. TAX CODE § 33.01(a) (Vernon 2005). Debtors' position is simply incorrect. The statutory provision upon which Debtors rely is inapposite. Private entities that, like Genesis, hold transferred tax liens are treated differently than taxing authorities under Texas law. There is a separate statutory provision regulating the amount of interest that such third party tax lien holders may charge. *See* TEX. TAX CODE § 32.06 (Vernon 2005). Under this statute, third party tax lien holders are allowed to charge up to 18 percent annual interest on the amount paid to acquire the lien. *See* TEX. TAX CODE §

To resolve the matter now before it, the court will begin by examining the language of section 511. In construing provisions of the Code, the court will follow the plain meaning rule: if the statute is clear and unambiguous, absent an absurd result, it must be applied as written. *See Lamie v. United States Trustee*, 540 U.S. 526, 534 (2004) ("It is well established that 'when the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms.'") (quoting *Hartford Underwriters Ins. Co.* v. *Union Planters Bank, N. A.*, 530 U.S. 1, 6 (2000) (in turn quoting *United States* v. *Ron Pair Enters., Inc.*, 489 U.S. 235, 241 (1989) (in turn quoting *Caminetti v. United States*, 242 U.S. 470, 485 (1917)))). By its own terms, section 511 applies only to "tax claims." The question for the court thus becomes whether Genesis' claim is a tax claim. The Code does not define what constitutes a tax claim. Obviously, the most clear-cut example is a debt owed directly to a governmental unit for unpaid taxes. However, where, as in the case at bar, the debt underlying the claim is not owed to a governmental unit but rather to a private

---

32.06(e) (Vernon 2005). There is nothing in section 511 that would cause the court to apply section 33.01 instead of section 32.06 in the case at bar; indeed, section 511 is best read to prescribe the rate of interest the *creditor* could charge (see below). Thus, it is clear that if the court applies Texas law, Genesis is entitled to its contract rate of 18 percent.

5     Section 1322(b)(2) of the Code provides that a plan may "modify the rights of holders of secured claims, *other than a claim secured only by a security interest in real property that is the debtor's principal residence.*" Code § 1322(b)(2) (emphasis added). The parties agree that Genesis' claim is excepted from modification under section 1322(b)(2) because it is secured only by a transferred tax lien on Debtors principal residence and that if the interest rate on Genesis' claim is to be modified, it must be done pursuant to section 1322(c)(2), which allows for the limited modification pursuant to section 1325(a)(5) of a claim secured only by a security interest in a debtor's principal residence. However, section 1322(b)(2) excepts from its scope exclusively those claims secured only by a *security interest* in the debtor's principal residence. The Code defines a security interest as a "lien created by agreement." Code § 101(51). Being a tax lien, the lien securing Genesis' claim on Debtors' residence, though it was *transferred* to Genesis by agreement, was *created* by operation of law and is thus subject to modification under section 1322(b)(2).

entity that, pursuant to a prepetition contractual agreement, paid off the taxes on behalf of the debtor, categorizing the claim is not quite as straightforward.

The language of section 511 indicates Congressional intent to include claims held by private parties within its scope. Section 511(a) states that the rate of "interest to enable a *creditor* to receive the present value of… a tax claim" will be determined "under applicable nonbankruptcy law." Code § 511(a) (emphasis added). "Creditor" is defined in the Code as an "*entity* that has a claim against the debtor." Code § 101(10)(A) (emphasis added). Congress' use of the broadly defined term "creditor" rather than "governmental unit"[6] demonstrates Congressional recognition that tax claims may be held by private entities. Had Congress wanted to limit section 511's applicability to claims in the hands governmental units it could have easily done so, but it chose not to.[7]

The principle that, where the statute does not otherwise specify (as it does in sections 507(a)(8) and 1129(a)(9)(C) and (D)), courts should focus on the nature of the underlying debt, not the identity of the holder of the claim, in determining a party's rights with respect to a claim supports the conclusion that section 511 applies to Genesis' claim. *See Shropshire, Woodliff & Co. v. Bush,* 204 U.S. 186, 189 (1907); *cf. FDIC v. Meyer (In re Meyer)*, 120 F.3d 66, 68 (7th Cir. 1997) (application of FED. R. BANKR. P. 4007(c) regarding timeliness of § 523 complaint should focus on whether complaint was timely filed respecting a specific debt, not so much on who makes the complaint). Applying this

---

[6] "Governmental unit" is a defined term under the Code. *See* Code § 101(27).

[7] Indeed, Congress did so limit the applicability of section 507(a)(8). *See* Code § 507(a)(8); National Tax Funding, L.P. v. Thomas (*In re* Thomas), No. 98-2439, 2001 Bankr. LEXIS 32, at *9 (Bankr. W.D. Pa. Jan. 18, 2001), *vacated in part by* 2002 U.S. Dist. LEXIS 26042 (W.D. Pa. Mar. 21, 2002). Congress similarly limited to claims of governmental units the applicability of sections 1129(a)(9)(C) and (D), the latter of which, like section 511, was added to the Code as part of BAPCPA.

principle, courts have determined that assignees and subrogees[8] have the same rights to which their predecessors-in-interest would be entitled had no transfer taken place under numerous provisions of the Code. *See Wilson v. Brooks Supermarket, Inc. (In re Missionary Baptist Found.)*, 667 F.2d 1244, 1246-47 (5th Cir. 1982) (permitting grocery store that cashed employees' payroll checks that were subsequently dishonored to succeed to the employees' priority status for wage claims under section 507(a)(3) (now section 507(a)(4))); *Florida v. Ticor Title Ins. Co. (In re Florida)*, 164 B.R. 636, 640 (B.A.P. 9th Cir. 1994) (holding a claim nondischargeable under section 523(a)(6) despite the fact that the present holder of the claim had obtained the rights to the underlying judgment by prepetition levy and was not the actual victim of the debtor's tort); *In re Bryer*, 227 B.R. 201, 204 (Bankr. D. Me. 1998) (assignees who received transfer of a restitution claim by virtue of a prepetition agreement entered into with the municipality to which the debt was originally owed held to have standing to bring nondischargeability action under section 1328(a)(3)).

It is clear that if Genesis had not paid Debtors' property taxes and the taxing authority had filed a proof of claim for the delinquent taxes in Debtors' bankruptcy case, the rate of interest on its claim would be determined under applicable nonbankruptcy law under section 511. The claim should also be subject to section 511 in the hands of Genesis, the taxing authority's successor-in-interest.

    B. <u>Genesis is entitled to reimbursement for attorney's fees.</u>

---

[8] Under Texas law, a party who, like Genesis, pays the real property taxes of another and receives transfer of the tax lien on the property is an assignee who is subrogated to all the rights of the transferring taxing unit. *See* TEX. TAX CODE § 32.065(c) (Vernon 2005); *JB Joyce, Ltd. v. Regions Fin. Corp.*, No. 06-04-000140-CV, 2005 Tex. App. LEXIS 7246, at *9 (Tex. App. Texarkana Sept. 1, 2005). This is, of course, subject to the mandate of the Texas legislature that such an assignee is entitled to a different, higher interest rate.

In the Objection, Genesis requested that the court grant reimbursement for its attorney's fees in the amount of $485.00. Section 506(b) governs whether a creditor is entitled to reimbursement for attorney's fees accrued during a bankruptcy case. Under section 506(b), a secured creditor is entitled to recover "reasonable fees, costs, or charges provided for under the agreement or State statute under which the claim arose." Code § 506(b).[9] The note executed by Debtors in favor of Genesis provides for the payment of attorney's fees, however, this was not the "agreement…under which the claim arose." Being a tax claim, Genesis' claim actually arose under the Texas Tax Code. Thus, Genesis is only entitled to reimbursement for reasonable attorney's fees to the extent that the Tax Code provides for their recovery. Section 33.48(a)(5) of the Texas Tax Code allows a taxing unit to recover attorney's fees "in the amount of 15 percent of the total amount of taxes, penalties, and interest due the unit." TEX. TAX CODE § 33.48(a)(5) (Vernon 2005). Texas courts have allowed third party tax lien holders such as Genesis to recover attorney's fees under this provision. *See Weisfeld v. Tex. Land Fin. Co. II*, 162 S.W.3d 379, 382-83 (Tex. App.—Dallas, 2005, no pet.). The amount of attorney's fees sought by Genesis does not exceed 15 percent of the total amount due on its claim, and there is nothing before the court to suggest that the amount requested is unreasonable. Thus the court awards to Genesis attorney's fees in the requested amount of $485.00.

### IV. Conclusion

For the foregoing reasons, the court holds that section 511 of the Code applies and, thus, Genesis is entitled to receive interest on its claim at the contract rate of 18 percent. Accordingly, the Objection is SUSTAINED. Confirmation of Debtors' Second Amended Chapter 13 Plan is conditionally DENIED; upon amendment to conform to this

---

[9] The phrase "or State statute" was added to section 506(b) by BAPCPA.

memorandum opinion, Debtors' Second Amended Chapter 13 Plan will be confirmed.

Genesis is awarded attorney's fees in the amount of $485.00.

It is so ORDERED.

### END OF MEMORANDUM OPINION ###